# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID PRICE and ROBYN PRICE ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. CIV-22-00714-PRW |
| ) | |
| CSAA GENERAL INSURANCE CO., ) | |
| COMPANY ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is Defendant CSAA General Insurance Company's Motion for Partial Summary Judgment (Dkt. 16). The motion is fully briefed, and for the reasons given below, Defendant's motion is **GRANTED**.

### *Background*[1]

Plaintiffs David and Robyn Price allege that wind and hail damaged the roof of their home on July 10, 2020. Plaintiffs were insured by CSAA at this time, and on September 22, 2020, they made a claim under their homeowners insurance policy regarding the loss. CSAA assigned the claim to an independent adjuster with US Adjusting Services, to inspect the roof for hail damage. On September 30, 2020, the independent adjuster inspected Plaintiffs' property and sent a Loss Report to CSAA detailing his inspection. The Loss Report included an estimate of damages below Plaintiffs' deductible. A CSAA field adjuster reviewed the Loss Report and agreed with its findings. On October 1, 2020, CSAA

---

[1] This section is based on the undisputed facts as described in the parties' briefs.

1

contacted Mr. Price to advise him that the amount of damages was below his Policy's deductible.

On November 19, 2020, Mr. Price attempted to email CSAA disputing the adjuster's findings, but he sent the email to an incorrect email address. Mr. Price later corrected this error, and on December 7, 2020, CSAA received his email disputing the CSAA adjuster's findings. The email included an estimate from an Edmond roofing company, Aegis Roofing, for the full replacement of the roof and eight photographs of the roof shingles, a window screen, and certain soft metals. The email also included a letter from a different roofing company, Red River Roofing, stating that the roof shingles had sustained storm damage. A CSAA adjuster responded that she would forward the email to her supervisor. CSAA did not respond again to Plaintiffs, and Plaintiffs did not contact CSAA again about the claim.

On June 1, 2022, Plaintiffs brought suit in state court to recover damages from CSAA for breach of contract, bad faith,[2] and punitive damages. CSAA then removed the case to federal court based on diversity jurisdiction under 28 U.S.C. § 1332(a)(1). CSAA now moves for partial summary judgment in its favor on Plaintiffs' bad-faith and punitive damages claims.

---

[2] Plaintiffs refer to this claim as "Breach of Duty of Good Faith and Fair Dealing." Notice of Removal (Dkt. 1, Ex. 1), at 4. For the sake of brevity, the Court refers to this as Plaintiffs' bad-faith claim.

### *Legal Standard*

Federal Rule of Civil Procedure 56(a) requires "[t]he court [to] grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding whether summary judgment is proper, the Court does not weigh the evidence and determine the truth of the matter asserted, but instead determines only whether there is a genuine dispute for trial before the factfinder.[3] The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[4] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[5] A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.[6]

If the movant carries its initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine

---

[3] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[5] *Anderson*, 477 U.S. at 248; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[6] *Anderson*, 477 U.S. at 248; *Adler*, 144 F.3d at 670.

dispute"; or by "showing . . . that an adverse party [i.e., the movant] cannot produce admissible evidence to support the fact."[7] The nonmovant does not meet its burden by "simply show[ing] there is some metaphysical doubt as to the material facts"[8] or theorizing a plausible scenario in support of its claims. Instead, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[9] And as the Supreme Court explained, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment,"[10] since "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"[11] Thus, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[12]

When the nonmoving party has the ultimate burden of persuasion at trial, the moving party "has both the initial burden of production on a motion for summary judgment

---

[7] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. at 322.

[8] *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[9] *Id.* (quoting *Anderson*, 477 U.S. at 251–52); *Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993)).

[10] *Liberty Lobby*, 477 U.S. at 247–48.

[11] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

[12] *Scott v. Harris*, 550 U.S. 372, 381 (2007).

4

and the burden of establishing that summary judgment is appropriate as a matter of law."[13] "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."[14] "Once the moving party points out the absence of evidence to create a 'genuine issue' of a 'material fact' on which the non-moving party bears the burden of proof at trial, . . . [t]he non-moving party must set forth specific facts showing there is a genuine issue for trial."[15]

## *Discussion*

The Court will first address Plaintiffs' bad-faith claim before turning to Plaintiffs' punitive damages claim.

I.   *Plaintiffs' Bad-Faith Claim*

CSAA asks the Court to find that a legitimate dispute exists between the insurer and the insureds as to the causation of damage and coverage under the Policy and that CSAA reasonably investigated Plaintiffs' roof claim.

---

[13] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002), *as amended on denial of reh'g*, (Jan. 23, 2003).

[14] *Id.*

[15] *Otis v. Canadian Valley-Reeves Meat Co.*, 884 F. Supp. 446, 449–50 (W.D. Okla. 1994), *aff'd*, 52 F.3d 338 (10th Cir. 1995) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

Under Oklahoma law, "[a]n insurer has an 'implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received.'"[16] "[T]he violation of this duty gives rise to an action in tort,"[17] and "[t]he core of a bad-faith claim 'is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy.'"[18]

To succeed on a bad-faith claim, "the insured must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of the insured's claim."[19] This determination is made "in light of all facts known or knowable concerning the claim at the time plaintiff requested the company to perform its contractual obligations."[20] But "until the facts . . . have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed."[21]

In determining whether to submit a bad-faith claim to the jury, courts generally use a two-step analysis.[22] First, the Court considers "whether there is a legitimate dispute

---

[16] *Shotts v. GEICO Gen. Ins. Co.*, 943 F.3d 1304, 1314 (10th Cir. 2019) (quoting *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005)).

[17] *Christian v. Am. Home Assurance Co.*, 577 P.2d 899, 904 (Okla. 1977).

[18] *Flores v. Monumental Life Ins. Co.*, 620 F.3d 1248, 1255 (10th Cir. 2010) (quoting *McCorkle v. Great Atl. Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981)).

[19] *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993) (citing *McCoy v. Oklahoma Farm Bureau Mutual Ins. Co.*, 841 P.2d 568, 572 (Okla. 1992)).

[20] *Id.* at 1439 (quotations omitted).

[21] *Id.*

[22] *Shotts*, 943 F.3d at 1315.

6

between the insurer and the insured regarding coverage or the value of the claim."[23] "[T]he fact that a reasonable jury could find in favor of the insurer based on all facts known or that should have been known by the insurer when it denied a claim is strong evidence that a dispute is 'legitimate.'"[24] Second, if the Court finds that there is a legitimate dispute between the parties, the Court considers "whether the plaintiff offered specific additional evidence to demonstrate bad faith."[25] A plaintiff may, for example, demonstrate bad faith with "evidence that the insurer did not *actually* rely on th[e] legitimate [dispute] to deny coverage, denied the claim for an illegitimate reason," treated the insured "[un]fairly," or "performed an inadequate investigation of the claim."[26]

### A. Legitimate Dispute

There is a legitimate dispute between Plaintiffs and CSAA regarding both causation of damage and coverage under the Policy. The storm giving rise to Plaintiffs' insurance claim took place on July 10, 2020, and Plaintiffs reported their claim to CSAA on September 22, 2020. CSAA assigned the case to an independent adjuster who then inspected Plaintiffs' property on September 30, 2020. The independent adjuster's inspection found hail damage to Plaintiffs' roof vents, HVAC vent caps, flue cap, and gutters but concluded that the amount of damage was below the Policy's deductible.

---

[23] *Id.*

[24] *Oulds*, 6 F.3d at 1442 (citing *Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760, 762 (Okla. 1984)).

[25] *Shotts*, 943 F.3d at 1315.

[26] *Id.* (internal quotations and citations omitted).

Reviewing the independent adjuster's Loss Report, the CSAA adjuster found no hail damage to Plaintiffs' roof shingles, gutters, downspouts, garage door, heat and air unit, siding, and fascia. The CSAA adjuster also concluded that the amount of damage was below the Policy's deductible. On October 1, 2020, CSAA notified Plaintiffs that the amount of damages was below the Policy's deductible.

Plaintiffs' argument that there is no legitimate dispute between CSAA and Plaintiffs focuses on the alleged inadequacy of CSAA's investigation. Plaintiffs argue that CSAA's investigation was inadequate because CSAA management never reviewed the supplemental documents contained in Plaintiffs' email that CSAA received on December 7, 2020.[27] The supplemental documents in the email dispute CSAA's evaluation and assessment of damages. Plaintiffs argue that because CSAA relied solely on their own documents in denying and refusing to reevaluate their insurance claim, there is no legitimate dispute between the parties.

But whether CSAA management actually reviewed these documents is an open question. Plaintiffs cite the deposition testimony of CSAA adjuster Rebecca "Becci" Pettit to argue that CSAA never reviewed the supplemental documents. Ms. Pettit did not have the authority to review these documents and decide whether to reevaluate Plaintiffs' claim, so she forwarded them to her manager, Angel Medrano. When asked if any member of

---

[27] Plaintiffs argue both that "CSAA never reviewed the [supplemental] documentation supplied by the Plaintiffs," and that "there is no indication that CSAA *managers* ever reviewed [supplemental] documentation provided by the Plaintiffs . . . ." Pls.' Resp. (Dkt. 31), at 6, 12 (emphasis added). The relevant issue is whether a CSAA manager ever reviewed the supplemental documentation since it is undisputed that only a manager could have re-evaluated Plaintiffs' claim. *Id.* at 38:22−39:1.

CSAA management had reviewed the supplemental documents, Ms. Pettit responded that she was "not sure . . . ."[28] Neither party deposed Mr. Medrano or any other CSAA manager to determine if any manager had ever reviewed the supplemental documents.

To summarize the undisputed facts, a CSAA adjuster found that Plaintiffs' roof and exterior components were not damaged by hail and that the amount of damage was below the deductible in Plaintiffs' Policy. The CSAA adjuster based this conclusion on an independent adjuster's Loss Report. Plaintiffs then sent an email to CSAA containing supplemental documentation to dispute CSAA's denial of their insurance claim. A CSAA adjuster forwarded this email to her manager who may or may not have reviewed these documents.

A reasonable jury could find in favor of CSAA based on all facts CSAA knew or should have known when it denied and refused to reevaluate Plaintiffs' claim. The mere possibility that CSAA management did not review Plaintiffs' supplemental documents is not enough to show that a reasonable jury could find only that CSAA acted in bad faith by denying and refusing to reevaluate Plaintiffs' claim. A reasonable jury could conclude that CSAA management did review the supplemental documents and decided that they did not warrant reevaluating Plaintiffs' claim. Also, a reasonable jury could infer from Plaintiffs' decision not to depose Mr. Medrano that Plaintiffs were not confident that Mr. Medrano did not review the supplemental documents.

---

[28] Dep. of Rebecca "Becci" Pettitt (Dkt. 31, Ex. 3), at 43:24.

Because a reasonable jury could find in favor of CSAA, there was a legitimate dispute between CSAA and Plaintiffs. Since Plaintiffs present no additional evidence showing otherwise, the Court finds that there was a legitimate dispute between CSAA and Plaintiffs as to the causation of damage and coverage under the Policy.

### B. Specific Additional Evidence of Bad Faith

Because there is a legitimate dispute between the parties, the Court looks to see whether Plaintiffs have "specific additional evidence to demonstrate bad faith."[29] Plaintiffs claim that CSAA acted in bad faith by (1) failing to conduct a reasonable investigation into Plaintiffs' claims, (2) failing to make prompt payments for benefits owed under the policy, and (3) making unreasonably low offers.

Plaintiffs first argue that CSAA's investigation was unreasonable, but they fail to offer "specific additional evidence of bad faith."[30] Again, Plaintiffs' claim that CSAA's investigation was unreasonable relies on the assumption that CSAA management never reviewed the supplemental documents attached to Plaintiffs' December 7, 2020, email. This assumption is based on Ms. Pettitt's deposition testimony, in which she said that she was "not sure" whether CSAA management had reviewed the supplemental documents.[31] Ms. Pettitt also stated that there was nothing in Plaintiffs' claim file showing whether CSAA management had reviewed the supplemental documents. Neither party deposed Ms. Pettitt's manager, Mr. Medrano, or any other member of CSAA management.

---

[29] *Shotts*, 943 F.3d at 1315.

[30] *Id.*

[31] Dep. of Rebecca "Becci" Pettitt (Dkt. 31, Ex. 3), at 43:24.

This evidence does not establish that CSAA management did not review the supplemental documents. It instead raises the possibility that CSAA management did not review the documents. Had Mr. Medrano been deposed, that possibility may have been resolved. Or if Plaintiffs had shown evidence of a CSAA company policy requiring managers to make a note in an insured's claim file when they review supplemental documents the insured submitted, then the absence of such a note might also establish that no manager reviewed the supplemental documents. But Plaintiffs have presented no such evidence.

Nor does Plaintiffs' evidence establish that CSAA failed to make prompt payments for benefits owed under the Policy or that CSAA made an unreasonably low offer. CSAA did not make payment to Plaintiffs because it concluded that the amount of damage to Plaintiffs' property was below their Policy's deductible. CSAA based this conclusion on its investigation of Plaintiffs' claim. But, apart from its argument that CSAA's investigation was inadequate, Plaintiffs offer no evidence that CSAA's damages conclusion was made in bad faith.

In sum, there was a legitimate dispute between CSAA and Plaintiffs regarding both causation of damage and coverage under Plaintiffs' Policy, and Plaintiffs otherwise lack evidence of CSAA's bad faith. Therefore, the Court grants CSAA's motion for summary judgment in its favor as to Plaintiffs' bad-faith claim.

## II.     *Plaintiffs' Punitive Damages Claim*

The issue of punitive damages "is dependent on and derivative of [Plaintiffs'] bad faith claims."[32] Because the Court grants summary judgment in CSAA's favor with respect to Plaintiffs' bad-faith claim, "[their] request for punitive damages must fail, too."[33]

### *Conclusion*

For the reasons given above, Defendant CSAA's Motion for Partial Summary Judgment (Dkt. 16) is **GRANTED**.

**IT IS SO ORDERED** this 15th day of August 2023.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[32] *See Shotts*, 943 F.3d at 1314.

[33] *See id.* at 1320.